NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES I. PECK IV, ESQ., : : Plaintiff, : v. : KENNETH JAMES DONOVAN, : : Defendant. : | CIVIL ACTION NO. 07-5500 (JLL) **OPINION** |

**LINARES**, District Judge.

Pending before this Court is Defendant Kenneth James Donovan's ("Donovan" or "Defendant") motion for summary judgment on all counts. Plaintiff James I. Peck IV, Esq. ("Plaintiff" or "Peck") has submitted opposition.[1] Having considered the briefs, the Court decides the motion without oral argument pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Donovan's motion is granted in part and denied in part.

**I.  Facts**

The facts of this case are straightforward and uncontroverted. This action arises out of a prior action before Judge Katharine S. Hayden, United States District Judge, captioned <u>American Cyanamid Co. v. Kenneth J. Donovan</u>, Civil Action No. 91-cv-1856. (Donovan's Statement of Undisputed Material Facts ("Donovan SOF") ¶ 1.) Plaintiff represented Donovan in that action between September 3, 1993 and May 8, 1995 pursuant to a contingent fee retainer agreement (the

---

[1] Defendant Wyeth Corporation ("Wyeth") filed a motion for summary judgment as well. (Docket Entry # 23.) However, on December 12, 2008, Peck dismissed Wyeth with prejudice. Thus, that motion is now moot.

"Retainer Agreement") dated August 16, 1993. (Id. ¶ 2.) The Retainer Agreement provided that if Peck paid or advanced the costs and expenses of litigation, Donovan would repay the advance plus interest at a rate of 1% above prime "at the conclusion of the litigation." (Compl., Exh. A ("Retainer Agreement" at 2.) Specifically, the Retainer Agreement contained the following language: "[a]t the conclusion of the litigation, all such [advanced] monies, including principal and interest, shall be reimbursed in full by the Client to the Attorney." (Id.) Importantly, the Retainer Agreement also spelled out the scope of Peck's services, noting that Peck was not required "to take an appeal, either directly or interlocutorily, under any circumstances. If an appeal is to be taken, a separate retainer agreement will be required by the Attorney." (Id.)

On January 20, 1995, Peck moved to withdraw as Donovan's attorney, and the motion was granted on May 8, 1995. (Donovan SOF ¶ 5.) At that point in time, Peck claims to have advanced $35,326.27. (Id. ¶ 4.)

Following Peck's withdrawal, Donovan represented himself pro se for approximately two years, from May 8, 1995 to April 9, 1997. (Id. ¶ 6.) Then, Philip Rosenbach, Esq. appeared on his behalf. (Id. ¶ 7.) Eventually, Rosenbach obtained a judgment in Donovan's favor in the amount of $589,393.75. (Id. ¶ 9.) The judgment was entered on December 15, 2000. (Id.) American Cyanamid subsequently appealed the adverse judgment against it. (Id. ¶ 10.) The Court of Appeals affirmed the judgment on October 18, 2001. (Id. ¶ 11.) On November 29, 2001, the District Court entered a satisfaction of judgment. (American Cyanamid Co. v. Kenneth J. Donovan, No. 91-1856 (KSH), Docket Entry No. 146.)

Peck filed his complaint initiating the present case on November 15, 2007. He alleges four contract, quasi-contract, and statutory counts against Donovan, including (1) breach of

2

contract; (2) unjust enrichment; (3) quantum meruit; and (4) statutory lien. Peck also alleged a statutory lien claim against Wyeth, the corporate successor to American Cyanamid. However, on December 12, 2008, Peck voluntarily dismissed Wyeth with prejudice, thereby releasing that claim. (Docket Entry # 29.)

**II.**     **Standard of Review**

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

**III.    Analysis**

    **A.    Counts 1 and 2 – Breach of Contract**[2]

In New Jersey, "[e]very action at law ... for recovery upon a contractual claim or liability, express or implied ... shall be commenced within 6 years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14-1. "Under New Jersey law, a cause of action is deemed to accrue for statute of limitations purposes when the potential plaintiff knows of his or her injuries and of facts sufficient to attribute those injuries to the fault of another." Cruz v. City of Camden, 898 F. Supp. 1100, 1106 (D.N.J. 1995) (citing Viviano v. CBS, Inc., 101 N.J. 538, 546, 503 A.2d 296, 300 (1986). Finally, "[i]t is axiomatic that a cause of action for breach of contract accrues when the breach occurs." Neuhart v. Trust Co. of New Jersey, No. A-5856-06T2, 2008 WL 2415281, at *5 (Super. Ct. App. Div. June 17, 2008).

Thus, for purposes of Peck's breach of contract allegation, the statute of limitations began to run at the point at which Donovan allegedly breached the contract. At that point, Peck's claim for damages accrued. The parties joust over the meaning of the "conclusion of the litigation," as used in the August 16, 1993 Retainer Agreement signed by Peck and Donovan. (Retainer Agreement at 2.) Certainly, the definition of that term governs the point at which Peck had a right to collect any monies owed under the Retainer Agreement. However, though Peck's right to collect accrued as of "the conclusion of the litigation," his right to institute a lawsuit did not accrue for statute of limitations purposes until Donovan breached the Retainer Agreement. Thus, for Donovan to prevail on the present motion, the Court must find that no issue of material fact

---

    [2] The Court interprets Counts 1 and 2 as asserting the same breach of contract claim.

exists both as to (1) the date on which litigation concluded for purposes of the Retainer Agreement; and (2) the date on which Donovan allegedly breached the Retainer Agreement by refusing to pay the monies owed.

On the record before this Court, there is simply insufficient evidence to grant Donovan's motion. First of all, the Retainer Agreement itself is ambiguous as to the meaning of "the conclusion of litigation." Peck argues that he was not entitled to any monies until November 29, 2001, the date upon which a "Satisfaction of Judgment" was entered in the underlying American Cyanimid matter.[3] Peck also argues that his understanding at the time of the contract was that he would not be able to collect any monies until "final disposition of any appeal taken by the party against whom judgment was entered in the District Court." (Dec. of Plaintiff ¶ 5.) Thus, he submits that he always understood "the conclusion of the litigation" to mean the end of any appeals period.

Donovan, on the other hand, argues that the "conclusion of the litigation" referred either to the date of judgment in the District Court (December 15, 2000), or to the date of the issuance of the Third Circuit's opinion affirming judgment, on October 18, 2001. (Donovan Br. 2-3.) Donovan contends that in either scenario, Peck's present complaint would be untimely.

Moreover, Donovan submits parol evidence of a December 14, 2000 letter written by Peck to Phillip Rosenbach, Esq., following Donovan's successful district court result.

---

[3] In support of his position, he points to item # 146 on the civil docket sheet for the American Cyanamid matter, which is the last entry on the docket and is entitled "Satisfaction of Judgment as to debt., American Cyanamid Co. in the total amt. of $589,393.75 & Taxation of Costs in the amt. of $4091.00..." (Dec. of Frederick F Greenman, Jr. ("Greenman Dec."), Ex. 3.) Indeed, neither party disputes that November 29, 2001 is the date of satisfaction of judgment; rather, the parties differ as to whether that dates constitutes the conclusion of the litigation or not.

(Greenman Dec., Ex. 4.)  In that letter, Peck commended Rosenbach on his accomplishment and made a request to be reimbursed for the monies that he had expended several years earlier.  Peck wrote:

> During the course of that representation I advanced monies to Mr. Donovan in the form of payments made directly by me on his behalf and expenses incurred in his service.  Pursuant to the retainer agreement between Mr. Donovan and me I was to be reimbursed for those payments and expenses at the conclusion of the litigation.  That point now has arrived.

(Id. at 1.)  Thus, Donovan argues that the letter is sufficient proof of Peck's intent in drafting the contract to expect reimbursement at the end of the district court proceedings, rather than any appeals period.[4]

Finally, Donovan argues that the language of the Retainer Agreement and the language of Peck's November 15, 2007 Complaint support his analysis.  The Retainer Agreement specifically carved out any appellate remedies, stating: "This agreement does not require the Attorney to take an appeal, either directly or interlocutorily, under any circumstances.  If an appeal is to be taken, a separate retainer agreement will be required by the Attorney."  (Retainer Agreement at 2.)  And in this Complaint, Peck alleges as follows: "On or about January 8 and 9, 2001, Plaintiff submitted to record counsel for Donovan sworn statements which itemized the costs and expenses paid by Plaintiff for and on behalf of Donovan during the litigation, plus interest pursuant to the terms of the retainer agreement."  (Compl. ¶ 11.)  Then, at Paragraph 27 of the Complaint, he alleges: "At the conclusion of the litigation, and prior to assessment of costs and

---

[4] The Court sets aside for the moment the difficulties associated with accepting parol evidence to evaluate the intent of parties to a contract when, as here, the evidence post-dates the contract by several years.  Given that the motion for summary judgment is denied, that is an issue of law that the parties will have a chance to address at a later date.

expenses by the United States District Court, Plaintiff demanded payment of $35,326.27, plus interest, as money expended by him for and on behalf of Donovan during the course of the litigation." (Compl. ¶ 25.) In concert, Donovan argues that all of these statements serve as incontrovertible evidence that the "conclusion of litigation" could not have encompassed a full appeals period.

    This Court disagrees. Given the ambiguous nature of the Retainer Agreement, the Court cannot find an absence of material fact. The Complaint, Retainer Agreement, and December 14, 2000 letter are all pieces of evidence that Donovan could use to press his case to a jury. However, issues of intent and contract interpretation, when arising out of an ambiguous provision such as this one, are not amenable to determination on summary judgment. "Although the construction of a written contract is usually a matter for the court, where its meaning is 'uncertain or ambiguous and depends upon parol evidence admitted in aid of interpretation, the meaning of the doubtful provision should be left to the jury." Garden State Bldgs., L.P. v. First Fidelity Bank, N.A., 305 N.J. Super. 510, 525 (App. Div. 1997) (quoting Michaels v. Brookchester, Inc., 26 N.J. 379, 387, 140 A.2d 199 (1958). Here, the parties disagree over what they intended the "conclusion of the litigation" to mean upon execution of the Retainer Agreement in 1993. Neither party has submitted sufficient evidence to overcome on this issue to warrant taking the decision away from a jury.

    More importantly, the issue for statute of limitations purposes is only partially solved by ascertaining the date on which litigation concluded for purposes of the Retainer Agreement. The other piece of the puzzle, about which little to no evidence has been presented, is when Donovan allegedly breached the complaint. The record before the Court contains evidence that Peck

submitted an affidavit of costs to Donovan's attorney with the expectation that it would eventually be sought as part of the pending application for costs from Judge Hayden. (Declaration of John B. Livelli, Esq. ("Livelli Dec."), Exs. I, J.)  Neither party, however, submits evidence of the breach of contract claim having accrued; that is to say, neither Peck nor Donovan has argued or proven that the breach of contract occurred either prior to, or after, November 15, 2001.  Even if litigation had concluded before that date for purposes of the Retainer Agreement, Peck's claim had yet to accrue until Donovan actually breached the contract.[5]  Thus, the motion for summary judgment must be denied as to this count.  Not only is the contract ambiguous, but so is the alleged date of breach.  As to Count 1, Donovan's motion is denied.

> **B.     Quasi-Contract – Counts 3 and 4**

In Counts 3 and 4, Peck advances claims of unjust enrichment and *quantum meruit*, respectively.  To recover on the theory of quasi-contract, the plaintiffs must prove "that the defendant ... received a benefit, and that retention of the benefit without payment therefor would be unjust."  Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 108 (App. Div. 1966). *Quantum meruit* is a form of quasi-contract.  Kopin v. Orange Products, Inc., 297 N.J. Super 353, 367 (N.J. Super. App. Div. 1997).  Thus, *quantum meruit* enables a party to recover the reasonable value of services rendered in the absence of a contract governing wages or remuneration.  Id.

"The statute of limitations in New Jersey for claims sounding in restitution/unjust

---

[5] Donovan could theoretically argue that accrual did not require an actual breach; rather, if Donovan clearly indicated that he would be breaching the contract, that would suffice.  At this stage, the Court does not concern itself with this argument because Donovan has not made it, and because no evidence exists by which the Court could find a "constructive breach."

enrichment or quantum meruit is six years." Iwanowa v. Ford Motor Co., 67 F. Supp. 2d 424, 473 (D.N.J. 1999). In Baer v. Chase, the Third Circuit addressed the question of accrual of quasi-contract and *quantum meruit* claims. 392 F.3d 609, 622 (3d Cir. 2004). In the absence of specific New Jersey law to the contrary, the Court held that the discovery rule does not apply to *quantum meruit* cases. Id. Rather, courts employ a "last rendition of services" test. Thus, the date of accrual for statute of limitations purposes is the last date upon which Peck rendered legal services to Donovan. As the Third Circuit notes, this test holds even if the plaintiff had an underlying contract governing the services provided. In fact, in Baer, the plaintiff argued that there was no possible way for him to have known that a quasi-contract claim had accrued because remuneration for his services was explicitly set forth in a contract. Id. The Third Circuit, however, noted that *quantum meruit* claims are not based on "real" contracts. "The essence of a quasi-contract claim is not the expectancy of the parties, but rather the unjust enrichment of one of them." Id.

Thus, with respect to Peck's quasi-contract claims at issue in this action, they accrued as of the date he last rendered service. Here, Judge Hayden granted his motion to withdraw as counsel on May 8, 1995. Thus, his claims under Counts 3 and 4 would have accrued as of that date and were time-barred as of May 8, 2001. Given that Peck did not file the present complaint until November 15, 2007, the Court grants Donovan's motion to dismiss as to Counts 3 and 4.

**C.     Statutory Lien**

Finally, Count 5 alleges lien liability under the Attorney's Lien Act, N.J.S.A. 2A:13-5, for the amount Peck allegedly advanced prior to withdrawing as Donovan's counsel. This Act provides as follows: "The court in which the action or other proceeding is pending, upon the

9

petition of the attorney or counsel at law, may determine and enforce the lien." In <u>Musikoff v. Jay Parrino's The Mint, L.L.C.</u>, the New Jersey Supreme Court noted that "the lien is rooted in equitable considerations, and its enforcement is within the equitable jurisdiction of the courts." 172 N.J. 133, 142, 796 A.2d 866, 874 (2002) (citation omitted.) Though the Court did not set forth a specific time limit to govern claims under this Act, it did find that the 45-day period in that case was "reasonable." <u>Id</u>. at 146.

Here, Donovan argues that Peck could have asserted his lien at any time after withdrawing as counsel on May 8, 1995. Instead, he waited until after the contractual statute of limitations period had run, filing the Complaint more than twelve years later, on November 15, 2007. This Court agrees. Though the statute does not set forth a specific time period within which lien liability claims can be asserted, Peck certainly could have lodged his lien immediately following withdrawal from the underlying litigation. That he chose not to do is not by itself dispositive of his claim. That he chose not to do so for twelve years, however, is a different story. The Court accordingly grants Donovan's motion as to Count 5, and dismissed it with prejudice.

**IV.   Conclusion**

For the reasons set forth above, Donovan's motion for summary judgment is granted in part and denied in part. Counts 1 and 2, alleging breach of contract, survive. However, Counts 3, 4, and 5 are all dismissed as untimely. An appropriate Order accompanies this Opinion.


Dated: March 30, 2009                                  /s/ Jose L. Linares
                                                       United States District Judge