NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES I. PECK, IV,<br><br>            Plaintiff,<br><br>v.<br><br>KENNETH JAMES DONOVAN,<br><br>            Defendant. | Civil Action No.: 07-5500 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This case involves a dispute about costs and expenses advanced by Plaintiff James Peck IV, Esq. ("Peck" or "Plaintiff") in connection with the representation of his former client Defendant Kenneth Donovan ("Donovan" or "Defendant") in an underlying matter, American Cyanamid Co. v. Kenneth Donovan, No. 91-18561. Peck brings this action to recover amounts expended in the course of representing Donovan for which he was not reimbursed.

There have been two prior opinions in this case: (1) this Court's March 31, 2009 Opinion, denying Defendant's motion for summary judgment with respect to Plaintiff's breach of contract claim[1] and granting summary judgment as to Plaintiff's unjust enrichment, *quantum meruit*, and statutory lien claims, Peck v. Donovan, 2009 WL 900068 (D.N.J. Mar. 31, 2009) (CM/ECF No. 32); and (2) this Court's November 4, 2010 Opinion, denying Defendant's second motion for summary judgment on Plaintiff's breach of contract claim, Peck v. Donovan, 2010 WL 4628198

---

[1] In its March 31, 2009 Opinion, the Court interpreted Counts I and II as asserting the same breach of contract claim and continues to do so herein.

(D.N.J. Nov. 4, 2010) (CM/ECF No. 54). This Court conducted a two-day bench trial on September 26 and October 6, 2011, during which the Court heard the testimony of both Plaintiff Peck and Defendant Donovan. Following is the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). At trial the sole issue before this Court was whether Plaintiff's claim is time barred.

## II.   FINDINGS OF FACT

The Court has considered the testimony and assessed the credibility of the witnesses as well as the documentary evidence presented at trial and finds as follows:

1. Defendant Donovan retained Plaintiff Peck to represent him and Donovan's company, Impact Profiles, in the matter of <u>American Cyanamid Company v. Kenneth J. Donovan and Impact Profiles, Inc. v. American Cyanamid Company and Phoenix Marketing Group, Inc.</u>, Civ No. 91-1856, venued in the District Court for the District of New Jersey ("American Cyanamid Litigation"). (Stipulated Facts ¶¶ 1, 7, CM/ECF No. 70.)

2. The American Cyanamid Litigation began in late 1991 or early 1992. At the outset of the litigation a North Carolina attorney represented Donovan in conjunction with New Jersey local counsel. (Stipulated Facts ¶ 3.)

3. Donovan retained Peck as his attorney in the American Cyanamid Litigation during the summer of 1993. On August 16, 1993 Donovan and Peck executed a retainer agreement in which Peck agreed to represent Donovan and his company Impact Profiles ("Retainer Agreement"). The Retainer Agreement provided, in relevant part, as follows: (1) Plaintiff Peck's would receive a contingent fee of one-third of any net recovery; (2) Defendant Donovan had the option of paying for the costs of the litigation himself, having Peck advance the costs, or sharing the costs with Peck; (3) Donovan would be responsible for repayment of advanced costs without regard to the result of the litigation; (4) "at the conclusion of the litigation" Donovan was to reimburse Peck for any amounts advanced by Peck for or on behalf of Donovan during the litigation in full plus interest; (5) Peck was not required to represent Donovan in any appeal relating to the American Cyanamid Litigation and in the event that Peck were to take an appeal on Donovan's behalf a separate retainer agreement was required. (Stipulated Facts ¶¶ 6-8; Ex. Retainer Agreement.)

4. In the fall of 1994 Peck and Donovan had a significant disagreement. Peck informed Donovan that he did not want to continue to represent Donovan due to "irreconcilable differences." In response, Donovan stated that he would "sue Peck if he ever had the funds to do so and that Peck would never see a dime out of the Cyanamid litigation." Pursuant to court order, Peck was relieved from representing Donovan and Impact Profiles on or about May 31, 1995. (Stipulated Facts ¶¶ 11-12.)

5. Throughout the course of the representation, Peck incurred $35,326.27 in costs and expenses advanced on behalf of Donovan including but not limited expert witness fees. (Stipulated Facts ¶ 17.)

6. Defendant Donovan retained separate counsel, Philip Rosenbach. (Stipulated Facts ¶ 13). On August 14, 1995, an attorney involved in the American Cyanamid Litigation, Frederick Greenman, wrote Peck a letter confirming a prior discussion with Peck. In the letter, Greenman stated that he understood that Peck incurred $35,326.27 in expenses and detailed arrangements for the payment of expenses. Greenman's letter also requested that if the agreement was satisfactory to Peck then he should sign the bottom corner, which Peck did, and send a copy to Greenman. (Ex. 08/14/1995 Greenman Letter.)

7. Donovan ultimately prevailed in the American Cyanamid Litigation. On September 28, 2000, District Court Judge Katherine Hayden, presiding over the matter, entered judgment in favor of Donovan for a total of $495,000.00 comprised of the following amounts: $165,000 in actual damages and $330,000 in punitive damages. (Stipulated Facts ¶¶ 13; Ex. Civil Court Docket for American Cyanamid Litigation, CM/ECF No. 117.)

8. Judge Hayden's order dated September 28, 2000 additionally awarded Donovan counsel fees and costs. However, this portion of the order was vacated on November 29, 2000. (Stipulated Facts ¶¶ 13-14; Exs. Civil Court Docket for American Cyanamid Litigation, CM/ECF No. 117-119.)

9. Final judgment in the American Cyanamid Litigation was entered on December 15, 2000. The final judgment did not include counsel fees or costs. (Stipulated Facts ¶ 15; Exs. Civil Court Docket for American Cyanamid Litigation, CM/ECF No. 120.)

10. In a letter dated December 14, 2000, Peck wrote to Donovan's counsel, Mr. Rosenbach, congratulating Mr. Rosenbach on achieving a successful result in the American Cyanamid Litigation and seeking reimbursement for the costs and expenses that Peck advanced on behalf of Donovan. In the letter, Peck stated that "[p]ursuant to the retainer agreement between Mr. Donovan and me I was to be

reimbursed for those payments and expenses at the conclusion of the litigation. That point now has arrived." (Stipulated Facts ¶ 16; Ex. 12/14/200 Peck Letter.)

11. Peck submitted sworn affidavits to Rosenbach dated January 8 and 9, 2001 which itemized all costs and expenses advanced by Peck during the American Cyanamid Litigation plus interest as per the Retainer Agreement. (Stipulated Facts ¶ 18; Exs. 1/8/2001 and 1/9/2001 Peck Affidavits.)

12. Mr. Rosenbach submitted a bill of costs to the Clerk of Court which included those advanced by Peck on January 9, 2001. (Stipulated Facts ¶ 19; Ex. Civil Court Docket for American Cyanamid Litigation, CM/ECF No. 121.)

13. On March 13, 2001, the Clerk of Court permitted $4,011 in costs and rejected $78,065.61 in proposed costs. Among the costs rejected were those advanced by Peck for expert fees. (Stipulated Facts ¶¶ 19-20; Ex. American Cyanamid Litigation, CM/ECF No. 133.)

14. Cyanamid appealed the judgment and, on January 31, 2001, execution thereof was stayed pending disposition of the appeal. The Court of Appeals for the Third Circuit affirmed the judgment of the District Court on October 18, 2001 and the corresponding opinion was entered on the docket of the District Court on November 21, 2001. (Stipulated Facts ¶¶ 21-22; Ex. American Cyanamid Litigation, CM/ECF Nos. 127, 145.)

15. The District Court entered a satisfaction of judgment by American Cyanamid on November 29, 2001 for the amount of $589,393.75 and taxation of costs in the amount of $4,091.00. Judgment proceeds were paid to and dispersed by attorney Frederick Greenman. However, none of the judgment proceeds were dispersed to Peck and Donovan has not reimbursed Peck for the advanced costs and expenses to date. (Stipulated Facts ¶¶ 24-24; Ex. American Cyanamid Litigation, CM/ECF No. 145.)

16. Peck filed suit to recover the costs and expenses advanced by him in the course of his representation of Donovan in the American Cyanamid Litigation in New Jersey Superior Court on January 5, 2007. The Complaint named various parties including both Donovan and his trial attorney, Rosenbach. However, Donovan was never served and maintains that he was not aware of the Superior Court action, and Peck agreed to dismiss the case against Rosenbach. (Stipulated Facts ¶¶ 26-27; Ex. Compl. Essex County Superior Court.)

17. Plaintiff Peck filed a Complaint in the instant action on November 15, 2007. (Stipulated Facts ¶ 28; Compl., CM/ECF No. 1.)

18. The Court finds Plaintiff's testimony credible regarding what he testified was his understanding of the Retainer Agreement and also his reliance on the conduct of Defendant's representatives concerning repayment.

19.        The Court also finds credible Defendant's statements to Plaintiff regarding the breakdown of their attorney-client relationship and that he was upset. Specifically, Defendant stated "I was absolutely livid. I said he would not be paid a dime. I said I would sue him as soon as I got the opportunity, and I just went off. I don't want to repeat what I said to Mr. Peck that day." (Tr. 107:21-25). However, it is not as credible that by those statements Defendant also meant that Peck would not be reimbursed for advanced costs. Rather, the more reasonable inference is that Defendant meant that Peck would not receive any fees if Donovan was ultimately successful in the American Cyanamid Litigation.

## II.   CONCLUSIONS OF LAW

Plaintiff's remaining claim in this case, which was the subject of the bench trial, is the breach of contract claim.

"As a federal court sitting in diversity, [the court] must, pursuant to Erie Railroad Co. v. Tompkins, 304 U.S. 54, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), apply the relevant state's substantive law, which includes its statute of limitations . . . ." Jaworowski v. Ciasulli, 490 F.3d 331, 333 (3d Cir. 2007). In New Jersey, actions for breach of contract are subject to a six year statute of limitations which begins to run on the accrual date. N.J.S.A. 2A:14-1 ("[e]very action at law . . . for recovery upon a contractual claim or liability, express or implied . . . shall be commenced within 6 years next after the cause of action shall have accrued.") As the Court stated in its prior opinion dated March 31, 2009,

> "Under New Jersey law, a cause of action is deemed to accrue for statute of limitations purposes when the potential plaintiff knows of his or her injuries and or facts sufficient to attribute those injuries to the fault of another." Cruz v. City of Camden, 898 F. Supp. 1100, 1106 (D.N.J. 1995) (citing Viviano v. CBS, Inc., 101 N.J. 538, 546, 503 A.2d 296, 300 (1986)). Finally, "[i]t is axiomatic that a cause of action for breach of contract accrues when the breach occurs." Neuhart v. Trust Co. of New Jersey, No. A-5856-05T2, 2008 WL 2415281, at *5 (Super. Ct. App. Div. June 17, 2008). Thus, for purposes of Peck's breach of contract allegation, the statute of limitations began to run at the point at which Donovan allegedly breached the contract. At that point, Peck's claim for damages accrued.

(CM/ECF No. 32, 4).

At the center of the dispute is the meaning of the term "conclusion of the litigation," as used in the August 16, 1993 Retainer Agreement. This is so because that is the point at which Peck had the right to collect monies advanced by him on behalf of Donovan. However, as this Court held in its March 31, 2009 opinion, "[t]hough Peck's right to collect accrued as of 'the conclusion of the litigation,' his right to institute a lawsuit did not accrue for statute of limitations purposes until Donovan breached the Retainer Agreement." Id.

Defendant argues that the Court must determine when Peck had an enforceable right in order to determine when the statute of limitations began to run. However, Defendant's argument is based on Metromedia Company v. Hartz Mountain Assocs., 139 N.J. 532 (1995), which involved an installment contract. Under that approach, a breach of contract claim accrues against each installment as each payment is missed. See Metromedia 139 N.J. at 535; see also County of Morris v. Fauver, 153 N.J. 80, 707 A.2d 958, 972 (1998) (noting that the installment approach has been adopted in various other situations involving periodic payments). However, the Retainer Agreement at issue does not provide for recurring payments of any kind.

The parties do not dispute that the monies advanced by Peck to Donovan became due, according to the Retainer Agreement, at "the conclusion of the litigation." However, the parties dispute the meaning of that term. Defendant argues that the conclusion of the litigation was December 15, 2000, when the American Cyanamid Litigation concluded at the trial level. Plaintiff argues that the litigation concluded on November 29, 2001, when the final disposition of the appeal was entered.

Pursuant to New Jersey contract law, where contract language is susceptible to more than one reasonable construction, a court may use extrinsic evidence of the circumstances surrounding the contract to ascertain the meaning of a disputed term so long as "the contended-for interpretation is one 'which the written words will bear.'" YA Global Investments, LP v. Cliff, 419 N.J. Super. 1, 11-12, 15 A.3d 857 (2011) (citations omitted). Generally, ambiguous contract terms are construed against the drafter. Malick v. Seaview Lincoln Mercury, 398 N.J. Super 182, 187, 940 A.2d 1221 (2008). With this framework in mind, the Court now turns to interpretation of the phrase "conclusion of the litigation."

First, the contract language supports a finding that the "conclusion of the litigation" was December 15, 2000, the date that final judgment was entered by the trial court. The paragraph immediately following the clause setting forth reimbursement for expenses and costs advanced states that Peck would not be required to represent Donovan in an appeal and that if Peck were to do so, a separate retainer agreement would be required. (Ex. Retainer Agreement, 2.)

In addition, evidence introduced at trial tends to demonstrate that was the intended meaning. At trial Mr. Peck testified that as per the Retainer Agreement, Donovan was to repay advanced monies after recovery because of Donovan's financial situation (Tr. 16:17-17:10). However, Peck sent Mr. Rosenbach a letter dated December 14, 2000 in which Peck explicitly stated as follows:

> During the course of [representing Donovan in the American Cyanamid Litigation] I advanced monies to Mr. Donovan in the form of payments made directly by me on his behalf and expenses incurred in his service. Pursuant to the retainer agreement between Mr. Donovan and me I was to be reimbursed for those payments and expenses at the conclusion of the case. That point now has arrived.

(Ex. 12/14/2000 Peck Letter to Rosenbach.) In addition, there is no dispute that if Donovan did not prevail in the American Cyanamid Litigation, the costs and expenses advanced on his behalf would nonetheless be due at that point. At trial both Peck and Donovan testified that they did not speak about what would happen if Donovan was successful at the trial level and that verdict was appealed. (Tr. 55:7-24, 100:18-101:23). Further, Donovan was not represented by independent counsel when he agreed to the terms set forth in the Retainer Agreement. (Tr. 51:24-52:9).

Construing ambiguous contract terms against the drafter is particularly warranted where, as here, the drafter is an attorney and the contract at issue is a retainer agreement. See Alpert, Goldberg, Butler, Norton & Weiss, P.C. v. Quinn, 410 N.J. Super. 510, 529 (App. Div. 2009) ("A court should construe an agreement between an attorney and a client 'as a reasonable person in the circumstances of the client would have construed it."). Thus, the Court concludes that for purposes of the Retainer Agreement, the "conclusion of the litigation" was December 15, 2000 and it was at that point that the costs and expenses advanced by Peck came due.

"A cause of action for breach of contract accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached." McFarland v. Harvey, 2011 WL 1261152, at *4 (N.J.Super.A.D. April 6, 2011); Sanchez v. Schwartzapfel, 2007 WL 2032911, at *4 (N.J. Super.A.D. July 17, 2007) ("A cause of action for breach of contract accrues when the breach occurs or should, with the exercise of due diligence, have been discovered.") (citing Sodora v. Sordora, 338 N.J.Super. 308, 313 (Ch. Div. 2000)).

In the case at bar, the circumstances surrounding whether or not Mr. Peck would in fact be paid subsequent to the conclusion of the litigation on December 15, 2000 would have been unclear to a reasonable person in Mr. Peck's position. In fact the reasonable inference from the evidence is that Mr. Peck was led to believe that he would be paid. This is so notwithstanding the fact that defendant makes much of the fact that in the fall of 1994 Donovan stated that he would "sue Peck if he ever had the funds to do so and that Peck would never see a dime out of the Cyanamid litigation." In light of the testimony presented at trial, the more reasonable inference is that Peck was being told that he would not be entitled to any fees if Donovan ultimately prevailed. In any event, this statement belies what transpired later. The evidence clearly indicates that Donovan, through his attorney Mr. Rosenbach, requested from Mr. Peck the costs in dispute herein and then submitted said costs and expenses at issue to the Court in the bill of costs submitted by Donovan's counsel to the Clerk of the Court in January of 2001. The actions by Mr. Rosenbach in requesting said costs from Mr. Peck are certainly indicative that no breach was imminent or even contemplated. Especially in light of the fact that Mr. Rosenbach was aware that Peck was continuing to assert his right to repayment of the costs.

In addition, on January 31, 2001, the court stayed the execution of judgment pending appeal. This in turn, precluded Donovan from collecting on the judgment. Once the Court stayed the Judgment, there is no evidence of any action on the part of the Defendant that would have indicated to Peck that the agreement would be breached and he would not be paid after the conclusion of the appeal. This is particularly the case because, as previously indicated, Defendant's appellate attorney Mr. Greenman knew about the amounts advanced by Peck as early as 1995 and, as indicated by the document itself, Donovan was copied on that letter. (Ex.

08/14/1995 Greenman Letter). After that point there was no indication by anyone to Plaintiff that his request for reimbursement of costs would be challenged or would not be honored. Thus, there was no evidence presented to this Court that Peck had any reason to know through communications, conduct or otherwise from either Donovan or that of his appellate and trial counsel that he would not be reimbursed. (Tr. 43:5-10, 46:3-7). The Court therefore finds that it was not until after the eventual distribution of the proceeds by Greenman subsequent to the satisfaction of judgment entered on November 29, 2001 that the breach occurred and the cause of action accrued.

    Defendant argued at trial that "when" Peck discovered he would not be paid is irrelevant because the discovery rule does not apply to breach of contract actions. However, Defendant's argument is misplaced.

    It is true that traditionally, the discovery doctrine applies to tort cases in which the injury is self-concealing or undiscoverable by its nature, not contract actions where parties to a contract are presumed to "know the terms of their agreement and a breach is generally obvious and detectable with any reasonable diligence." County of Morris v. Fauver, 153 N.J. 80, 109-110, 707 A.2d 958 (1998). "Because the discovery rule imposes on plaintiffs an affirmative duty to use reasonable diligence to investigate a potential cause of action, and thus bars from recovery plaintiffs who had 'reason to know' of their injuries, the discovery rule generally does not apply to contract actions." Id. However, "[t]he doctrine is applicable, under appropriate circumstances to contract actions." Sodora v. Sodora, 338 N.J. Super 308, 313, 768 A.2d 840 (Ch. Div. 2000)

    "The discovery rule provides that, 'in an appropriate case, a cause of action will not accrue until the injured party discovers, or by exercise of reasonable diligence and intelligence

should have discovered, facts which form the basis of a cause of action.'" County of Morris v. Fauver, 153 N.J. 80, 109, 707 A.2d 958 (1998) (quoting O'Keeffe v. Snyder, 83 N.J. 478, 491, 416 A.2d 862 (1980)). In order to apply the discovery rule, "equitable claims of the parties must be weighed against each other and [] not every delayed discovery will justify the application of the rule." Id.

The Court finds that under the specific and limited circumstances of this contract action as set forth above, the appropriate date for statute of limitations purposes was November 29, 2001. The Court also notes that Plaintiff Peck acted diligently by sending a letter dated December 14, 2000 congratulating Rosenbach on securing a favorable result in the American Cyanamid Litigation and requesting payment of his costs. Thereafter, on January 8 and 9, 2001, Peck submitted at Defendant's attorney's request sworn affidavits detailing advanced fees and costs to Rosenbach. Thus, Plaintiff was diligent and placed Defendant through his attorney on clear notice that he expected to collect the monies due to him by Defendant and was thereafter led to believe by actions and inactions of the Defendant through his representatives that he would in fact be paid.

At no time thereafter did Defendant nor any of his representatives inform Peck or lead him to believe that he would not be reimbursed. (Tr. 42:8-44:11). Nor did Defendant challenge or question the amount claimed by Peck. (Tr. 36:1-5). Therefore, the Judgment in the action having been stayed, Peck had no way of knowing that Donovan did not intend to reimburse him and it was not until after Mr. Greenman distributed the Cyanamid Litigation proceeds that the breach became apparent. Mr. Rosenbach's request from the Plaintiff for an affidavit of costs in fact seemed to indicate to the Plaintiff that he would in fact be paid. Furthermore, the costs he

submitted were in turn resubmitted by Rosenbach to the Clerk of the Court on January 9, 2001. These actions by Defendant's representative bar Defendant from now arguing that Plaintiff should have known that he would not be repaid in 1994-1995 when Defendant told Peck that he would "never see a dime out of the Cyanamid litigation." The actions by the Defendant subsequent to the entry of Judgment on December 15, 2000 indicated otherwise. Defendant cannot now benefit from what would amount to a deceptive course of conduct and representations which prevented Peck from finding out Defendant's true intentions and filing suit earlier. See e.g. Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Assocs., 182 N.J. 210 (2005) (finding a breach of the duty of good faith where defendant employed evasive and deceptive tactics over the course of many years to prevent plaintiff from exercising a contract option).

Therefore, this Court concludes that the breach of the Retainer Agreement accrued after the distribution of judgment proceeds, when Peck was fully able to ascertain that Donovan would not repay him. Thus, Plaintiff's claim did not accrue until, at the very least, November 29, 2001, the date that satisfaction of judgment was entered by the District Court. Plaintiff filed the present action on November 15, 2007, and his Complaint was therefore filed timely.

### III.  CONCLUSION

For the reasons stated above, the Court will enter judgment in favor of Plaintiff. An appropriate Order and Judgment accompany this Opinion.


Dated: December 22, 2011

/s/ Jose L. Linares
Jose L. Linares
United States District Judge