NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JAMES I. PECK IV, ESQ., | Civil Action No.: 07-5500 (JLL) |
| Plaintiff, | |
| v. | |
| KENNETH JAMES DONOVAN, | **OPINION** |
| Defendant. | |

LINARES, District Judge.

This matter comes before the Court on Defendant Donovan's motion for reconsideration of the Court's December 22, 2011 judgment entered in favor of Plaintiff Peck (CM/ECF No. 75) pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 7.1(i) governing such motions. No oral argument was heard. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendants' motion is DENIED.

## I.  Background and Procedural History

The Court will not set forth the underlying facts at length, as it has done so in previous Opinions (CM/ECF Nos. 32, 54, 74) and the Court writes only for the parties. This action arose out of Defendant Donovan's breach of an attorney retainer agreement between Plaintiff Peck and Defendant (hereafter "Retainer Agreement"). Pursuant to the terms of the Retainer Agreement, Donovan was to reimburse Peck for costs and expenses advanced on his behalf during the course of his representation in the matter of <u>American Cyanamid Company v. Kenneth J. Donovan and</u>

1

Impact Profiles, Inc. v. American Cyanamid Company and Phoenix Marketing Group, Inc., Civ

No. 91-1856.  In the matter before this Court, the parties did not dispute that Donovan owed

Peck the amounts at issue; rather, the sole question at trial was whether Plaintiff's claim was

time barred.

On September 26 and October 6, 2011, the Court conducted a two day bench trial in the

matter of Peck v. Donovan.  As discussed at length in the Court's Opinion dated December 22,

2011, the Court heard testimony from both Plaintiff Peck and Defendant Donovan.  Based on the

evidence adduced at trial and the parties' trial briefs, the Court made its findings of fact and

conclusions of law and entered judgment in favor of Plaintiff in the amount of $35,326.27 plus

accrued interest.  (CM/ECF Nos. 73-74).

On January 5, 2012, Defendant filed the instant motion for reconsideration, arguing that

the Court made several factual findings unsupported by the record and that the Court erred in its

conclusions of law. (CM/ECF No. 75, 1).  The Court addresses each of Defendant's arguments in

turn below.  Plaintiff did not file a formal opposition, but wrote a letter to the Court voicing his

limited opposition concerns.  Those concerns can be summarized as follows: (1) Defendant's

motion for reconsideration is "frivolous to the point where a protracted response could itself be

looked upon as pointless and derided as a waste of court time and resources" because there was

no error during trial and there is presently no factual or legal basis for granting the motion before

the Court; (2) Defendant's references to criminality on the part of Plaintiff in the instant motion

are solely an attempt to deride Plaintiff's character as there was no mention thereof at trial.

(CM/ECF No. 81).

## II. LEGAL STANDARD

"A party seeking reconsideration must satisfy a high burden, and must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice." Leja v. Schmidt Mfg., Inc., 743 F.Supp.2d 444, 456 (D.N.J., 2010) (quoting N. River Ins. Co. V. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Significantly, a motion for reconsideration is not a vehicle to re-litigate old matters or argue new matters that could have been raised before the court made its original decision. See, e.g., P. Schoenfeld Asset Mgmt., L.L.C. v. Cendant Corp., 161 F. Supp. 2d 349, 352 (D.N.J. 2001). "A party seeking reconsideration must show more than a disagreement with the Court's decision and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden" G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting Carteret Savings Bank, F.A. v. Shushan, 721 F.Supp. 705, 709 (D.N.J 1989), appeal dismissed, 919 F.2d 225 (3d Cir. 1990).

Reconsideration is an "extraordinary remedy," which should be "granted very sparingly" See L. Civ. R. 7.1(i) cmt. 6(d); see also Brackett v. Ashcroft, No. 03-3988, 2003 WL 22303078, at *2 (D.N.J., 2003) ("[R]econsideration is an extraordinary remedy, that is granted 'very sparingly', and only when 'dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered"). Motions made under Federal Rule of Civil Procedure 59(e) are governed by Local Rule 7.1, which requires that the moving party "set forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." Further, "[t]he word 'overlooked' is the dominant term, meaning that except in cases where there is a need to correct a clear error or manifest injustice, 'only

dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration.'" Leja v. Schmidt Mfg., Inc., 743 F.Supp.2d 444, 456 (D.N.J., 2010) (citations omitted).  Finally, "[t]he fact that an issue was not explicitly mentioned by the court does not on its own entail that the court overlooked the matter in its initial consideration." Morton v. Fauver, No. 97-5172, 2011 WL 2975532 *at 3 (D.N.J. 2011).

## III.  DISCUSSION

In his motion for reconsideration, Defendant specifically states that "[t]he basis for this motion is that key findings of fact made by the Court are not supported by the record. Furthermore, to the extent that these findings are supported by the record, they do not support the Court's legal conclusions with respect to the tolling of the statute of limitations is determined by controlling New Jersey case law." (CM/ECF No. 74, 1).  Although Defendant does explicitly state on which ground he relies, thus unless otherwise noted herein, the Court will presume that Defendant attempts to rely on the third ground, the need to correct clear error of law or prevent manifest injustice.  "A decision suffers from 'clear error' only if the record cannot support the findings that led to that ruling." Leja, 743 F.Supp.2d at 456.  With this in mind, the Court now turns to the arguments advanced by Defendant.

A.  Factual Arguments

As an initial matter, the Court emphasizes that only dispositive factual matters which were presented to the Court but not considered may be the subject of a motion for reconsideration. Leja v. Schmidt Mfg., Inc., 743 F.Supp.2d 444, 456 (D.N.J., 2010) (citations omitted).  Everything that Defendant submits in support of his argument that the certain factual

4

findings were in error was previously presented to the Court either in trial briefs, during trial, or in post-trial proposed findings of fact, and included in the Court's Opinion dated December 22, 2011 (CM/ECF No. ).  A motion for reconsideration is not a vehicle through which a dissatisfied party may relitigate his case. See e.g. P. Schoenfeld Asset Mgmt., 161 F.Supp.2d. at 352.

First, Defendant argues that the Court erred in its "unsupported and unreasonable inference that in late 1994 or early 1995 Donovan confirmed his willingness to repay Peck for the litigation costs advanced by Peck."[1]  (CM/ECF No. 77, 1-2).  It bears mention that in this regard Defendant mischaracterizes the Courts finding.  Specifically, the Court did not find that Donovan "confirmed his willingness to repay Peck,"; rather it did find that the reasonable inference from the statements made by Donovan was that Peck would not receive any fees in connection with the American Cyanamid Litigation but that it was "not as credible that by those statements Defendant also meant that Peck would not be reimbursed for advanced costs." (CM/ECF No. 74, 5).

With regard to Donovan's statement that Peck would "never see a dime" out of the litigation, Defendant argues that the Court's inference that this "meant only that Peck would not receive any fees but would be reimbursed for advanced costs" was unreasonable for the following reasons: (1) "Donovan's blunt message to Peck could not possibly have intended to express the far more subtle message that Donovan would be willing to repay Peck's costs, especially coupled with the statement that Donovan would sue Peck if he ever had the funds to do so"; (2) "Donovan's statement must be viewed in the context of Donovan reacting to Peck abandoning the case and leaving Donovan to struggle pro se against one of the larger

---

[1] The Court notes that in Defendant's motion for reconsideration (CM/ECF No. 75) he states that these events occurred in late 2004 or early 2005. However, in a subsequent filing (CM/ECF No. 77), Defendant corrects this error and clarifies that he meant to argue that the Court made the "unsupported and unreasonable inference that in late 1994 or early 1995 Donovan confirmed his willingness to repay Peck . . . ."

corporations in the country in a case venued in New Jersey, far from Donovan's North Carolina residence"; (3) "Peck himself acknowledged that Donovan made the statement at issue, and Peck never claimed that he understood the statement to refer only to costs." (CM/ECF No. 75, 2). Defendant additionally asserts that the Court's finding was based on certain proposed findings of fact submitted by the parties. However, the Court emphasizes, as discussed in the Opinion dated December 22, 2011 (CM/ECF No. 74), that factual findings were based on the evidence adduced at trial, taking into account witness credibility. Particularly in conjunction with other evidence to be discussed below, such as that an attorney involved with the American Cyanamid litigation was in contact with Peck regarding repayment of fees thereafter, Defendant fails to meet his burden in this regard.

Next, Donovan additionally relies on the statement by Donovan that Peck would "never see a dime" to argue that this position never changed and that neither Defendant nor his representatives indicated that Peck would be repaid. (CM/ECF No. 75, 7). Again, Defendant is attempting to relitigate issues before the Court and, in any event, Defendant in no way accounts for the fact that Defendant's representatives acknowledged that the amounts were owed thereafter and even submitted Plaintiff's costs to the Court in the underlying matter. (CM/ECF No. 74, ¶¶ 11-12).

Third, Defendant argues that the Court significantly erred in its discussion of the August 14, 1995 letter from attorney Greenman to Peck. (CM/ECF No. 75, 3). Defendant also states that the Court's description of Greenman as "an attorney involved in the American Cyanamid Litigation is incorrect" because at the time of the letter at issue, Greenman was only an attorney who was willing to become involved. (Id.). However, it is undisputed that Mr. Greenman became involved with the litigation at some point. The relevance of that letter to the Courts

6

findings was not at what point Mr. Greenman became involved, rather the Court found it significant that the letter acknowledged the amounts due Peck and, despite the fact that it was sent after Donovan said that Peck would "never see a dime" out of the litigation, tends to show that Donovan did not contemplate breaching the contract at that time.

At trial the Court heard testimony that Mr. Greenman defended the appeal on behalf of Mr. Donovan and received and disbursed the judgment proceeds following the appeal. (See e.g. Tr. 37:21-38:10). Also, Plaintiff testified as follows:

> Now as early as 1995, Mr. Greenman knew the precise amount of quote, expenses, close quote, I personally and legitimately incurred during my participation in the American Cyanamid litigation, the total being $35,325.27. On August 4th, 1995, Mr. Greenman wrote me a letter confirming the exact debt of Mr. Donovan and seeking to make arrangements for its post judgment payment, quote, out of any recovery in this case, close quote.

(Tr. 38:17-24). The Court notes that Defendant lodged a very similar objection if not the same in substance at trial stating in essence that Mr. Greenman never represented Mr. Donovan before this Court and that "Mr. Greenman was not in a position to modify the retainer agreement." (Tr. 39:2-5, 40:16-19). However, the Court ruled that the evidence went to weight, not admissibility. The Court explained that the letter was "informative as to the knowledge of Mr. Greenman at the time, once he did represent [Donovan] and he did the disbursement. I think the totality of the circumstances needs to be looked at by the Court, so I am going to accept this letter." (Tr. 40:25-41:4). The Court additionally noted that "Mr. Greenman eventually did the disbursement, so what he knew or did not know at this particular time may be of some relevance." (Tr. 39:24-40). Thus, while the Court's finding of fact (CM/ECF No. 74 ¶ 10) generally described Mr. Greenman in that portion of the Opinion and did not specify at which particular point Mr.

Greenman became involved in the litigation, Defendant does not meet his burden of demonstrating that the Court overlooked facts presented to the Court.

In his motion, Defendant additionally writes that "Greenman's contingent acceptance of Peck's claim for costs expressed in 1995 could not possibly have implied to Peck some six years later that Greenman and, more importantly, Donovan had acknowledged Peck's entitlement to be repaid these costs in any other circumstances." (CM/ECF No. 3). However, Defendant's argument plainly disregards the statements made at trial, and he does not refer to the transcript in support of his arguments here or anywhere else in his brief. Again, the Court found this fact significant because it reasonably indicated to Peck that he would be paid. As apparent from the portions of the Transcript quoted above, Defendant is merely attempting to relitigate issues previously before the Court.

Next, Defendant argues that the Court's finding that Peck acted diligently to discover his cause of action cannot be supported by the record. (CM/ECF No. 75, 8). Specifically, Defendant states that "Peck's delivery of affidavits detailing costs was irrelevant to any concept of due diligence or to Donovan's obligations owed to Peck. Contrary to the Court's [O]pinion, the delivery of these affidavits did not place Donovan or his attorneys on notice that Peck expected to collect the monies due him." (CM/ECF No 75, 8). However, once again, Defendant does not argue that the Court overlooked facts presented to the Court, but attempts to relitigate issues by arguing that based on the same facts addressed in the Opinion, the Court reached the wrong conclusion. Without more, that is an argument more appropriately made on appeal, it exceeds the scope of a motion for reconsideration.

In addition, in further support of this argument, Defendant states that "it was probable that in and around November 2001 Peck was simply not paying attention to the money he was

8

owed by Donovan.  On October 25, 2001, Peck was temporarily suspended form the practice of law as a result of pleading guilty to one count of knowingly and willfully possessing child pornography. . . ."  In this respect, Defendant may not now make arguments that it could have previously raised if appropriate.  Leja v. Schmidt Mfg.Inc., 743 F.Supp.2d at 456 ("Since the evidence relied upon in seeking reconsideration must be 'newly discovered,' a motion for reconsideration may not be premised on . . . evidence which was available but not presented prior to the earlier ruling").  The Court does not question that Defendant was previously aware of such arguments and prepared to make them at trial, as Defendant improperly submitted documents to the Court to that effect along with its exhibits that had been properly moved into evidence.  The Court declined to consider such documents at the time, as they were at no time mentioned or even alluded to during the course of the trial nor were they in evidence.  On this issue, Plaintiff states as follows: "Reiteration of previous attempts to disparage my character to engender bias, and for no other reason, appears especially shameless and shameful now in view of the fact that not one single word was spoken at trial about the conviction, or about any circumstance remotely related to it.  Finding nothing in the record with which to impugn the contrary result, my adversary resorts to incendiary matter entirely outside the record, thereby providing Your Honor with further legitimate justification to reject the motion." (CM/ECF No. 81, 1)  Regardless of Defendant's motive for raising this issue now, the Court declines to consider this argument as doing so is certainly beyond the scope of this motion.

Finally, Defendant argues that "the [C]ourt's final factual error is its conclusion that the breach of the Retainer Agreement accrued after the distribution of judgment proceeds 'when Peck was fully able to ascertain that Donovan would not repay him. . . The record supports only the much more limited fact that Peck was not paid at that time, just as he was not paid in

9

November 2000 or any time thereafter." (CM/ECF No. 75, 10). Again, this issue was already

presented to the Court and litigated at length. Defendant's argument with regard to this point

demonstrates no more than mere disagreement with the Court's decision.

B. Legal Arguments

Again, the Court emphasizes that a motion for reconsideration is not a vehicle to

relitigate issues previously before the Court nor is it appropriate for a party to make arguments

that it may have previously made. However, in his moving brief, Defendant submits that "[t]he

Court's application of the discovery rule overlooks and this applies controlling New Jersey

authority." (CM/ECF No. 75, 4). To the extent Defendant is attempting to assert that the Court

overlooked controlling New Jersey authority, the Court notes that "[f]or a matter to have been

overlooked, the matter must have been brought to the attention of the court at the time the court

made its decision on the underlying matter it is being asked to reconsider." Morton v. Fauver, at

3. Even a cursory review of the Court's Opinion reveals that Defendant did not overlook this

issue.

With regard to this point, Defendant additionally argues that "based on the unambiguous

language of the retainer agreement, there is no doubt that Donovan owed Peck costs on

December 15, 2000," at the conclusion of the litigation. (CM/ECF No. 75, 4). Defendant also

harps on that Peck knew when the monies became due. As discussed in the Court's previous

Opinion denying summary judgment and its Opinion at issue here, when the obligation became

due and when the breach occurred are not necessarily one in the same. There is no question that

the parties have previously litigated this issue and Defendant could have previously cited to the

cases it relies on here to argue that the Court's decision was in error. Indeed, this was a primary issue dealt with by the Court in its prior Opinions and at trial.

Finally, in a letter supplementing Defendant's moving brief and making certain corrections, Defendant directs the Court to a New Jersey Supreme Court decision, McDade v. Siazon, 208 N.J. 463, 32 A.3d 1122 (2011), which was issued on the same day as this Court's previous Opinion. (CM/ECF No. 77). To the extent that Defendant is attempting to argue that there has been an intervening change in controlling law without explicitly so stating, this argument is unavailing. As Defendant points out, this case involved the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., not a breach of contract action. (CM/ECF No. 77, 2).

In any event, Defendant cites to language from the opinion which directly quotes a previous case, Beauchamp v. Amedio, 164 N.J. 111, 751 A.2d 1047 (N.J. 2000), in which the New Jersey Supreme Court specified the proper analysis for that type of case as follows: (1) "determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual"; (2) determine whether notice of a claim was filed within ninety days; (3) if notice was not properly filed, "decide whether extraordinary circumstances exist justifying a late notice." (CM/ECF No. 77, citing McDade). The New Jersey Supreme Court continues, noting that "[a]lthough occasionally the facts of a case may cut across those issues, they are entirely distinct. Id., at 5 (quoting Beauchamp, 164 N.J. at 118-19). Defendant writes:

> In the present case, the Court determined that the claim accrued on November 15, 2000, at the conclusion of the trial court litigation. Since this is a contract case, the plaintiff certainly knew Donovan was responsible for repayment of advanced costs. There was nothing left to discover, and therefore the discovery rule does not apply.

(CM/ECF No. 77, 2).  However, in making this argument Defendant once again mischaracterizes the Court's Opinion.  Significantly, the Court did not hold that the claim accrued on November 15, 2000, at the conclusion of the trial court litigation; rather, as unequivocally stated by the Court, "[t]hus, Plaintiff's claim did not accrue until, at the very least, November 29, 2001, the date that satisfaction of judgment was entered by the District Court."  (CM/ECF No. 74, 12).  In any event, as the case and even the particular language relied upon by Defendant therein involves a separate type of analysis and is directly quoted from an opinion issued in 2000, the Court cannot conclude that <u>McDade</u> is intervening controlling law here.

## V.  CONCLUSION

As discussed above, the movant must meet a high burden, as reconsideration is an extraordinary remedy which should be granted sparingly.  Thus, based on the reasons detailed above, Defendant Donovan's motion for reconsideration of the Courts December 22, 2011 judgment entered in favor of Plaintiff Peck (CM/ECF No. 75) is DENIED.

An appropriate Order accompanies this Opinion.

DATED:  2/22/12

Jose L. Linares
United States District Court